# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DARLENE GOODMAN,

     Plaintiff,

v.                                           Civil No. 04-895 WJ/ACT

VILLAGE OF LOS LUNAS, a Municipal Entity
Organized Under the Laws of the State of New
Mexico and its subsidiary the LOS LUNAS
POLICE DEPARTMENT, SERGEANT
WERNER, an Officer of the Los Lunas Police
Department, Individually, MICHAEL
SANDOVAL, an Officer of the Los Lunas
Police Department, Individually and in his
Official Capacity, MARK GARCIA, an Officer
of the Los Lunas Police Department, Individually
and in his Official Capacity, OFFICER TORRES,
an Officer of the Los Lunas Police Department,
Individually and in his Official Capacity, LOS
LUNAS PUBLIC SCHOOLS, a Public School
System Organized Under the Laws of the State of
New Mexico and Through its Board of Education,
and ARMANDO REYES, Superintendent of the
Los Lunas Public Schools, Individually and in
His Official Capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY AND OTHER GROUNDS

       THIS MATTER comes before the Court upon a Motion to Dismiss Plaintiff's Complaint

on the Basis of Qualified Immunity and Other Grounds, filed by Defendants Los Lunas Public

Schools ("LLPS") and Armando Reyes, on January 7, 2005 **(Doc. 18)**; and Plaintiff's Motion to

Amend Complaint, filed January 25, 2005 **(Doc. 21)**.  Having considered the parties' briefs and

the applicable law, I find that Defendant's motion is well-taken and will be granted.

## Background

Plaintiff is a former employee who previously sued LLPS when she was terminated.[1] Plaintiff sues LLPS again.  She alleges that Defendants violated her constitutional right of free speech under the First Amendment and the right to be free of excessive force under the Fourth Amendment.

Plaintiff alleges that on December 19, 2002, she entered the campus of Los Lunas High School to "deliver newsletters informing teachers of Plaintiff's support group."  She claims that the forming of a teacher support group, and the drafting and distribution of the newsletters furthered a "public interest."   Plaintiff distributed her newsletters without incident and left the campus, but then returned "to make an additional contact."  Defendant Reyes, Superintendent of LLPS ("Reyes"), contacted officers of the Los Lunas Police Department, and had Plaintiff physically restrained and removed from the campus.   Complaint, ¶ 46-53.

The Court need not pass on Plaintiff's claims for excessive force in Counts I, II, V, and VI, or on those parts of Plaintiff's other claims which are asserted against the Village of Los Lunas and the officer Defendants.  Plaintiff's claims against these Defendants have apparently been resolved, except for the matter of attorney fees and costs.  Doc. 16 ("Acceptance by Plaintiff of Offer of Judgment by Village of Los Lunas Defendants") and Ex. 1.

In Count III, Plaintiff claims that Defendant Reyes used excessive force in her removal

---

[1]  Plaintiff's case was consolidated with several other actions filed by other teachers who had also been employed by Los Lunas Public Schools.  See Civil No. 01-1316 (consolidated into Civil No. 01-640).  Plaintiff Goodman's claims were settled (Civ. No. 01-640, Doc. 258).  See Duhart v. Carlson, 469 F.2d 471 (10th Cir. 1972) (Court can take judicial notice of its own records).

from the campus, in violation of the Fourth Amendment.  In Count IV(mislabeled as Count II), Plaintiff claims that Reyes' conduct violated her First Amendment right of freedom of speech and of association. Counts VII and VIII are both claims of municipal liability asserted against LLPS based on Reyes' conduct.  Count IX is a claim for punitive damages against Defendant Reyes in his individual capacity.

**Qualified Immunity Standard**

Defendants have raised the defense of qualified immunity, which requires that the Plaintiff must demonstrate that Defendants' actions violated a specific constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001).  If Plaintiff cannot do so, then the qualified immunity inquiry comes to an end.  Id.  If Plaintiff does meet this initial burden, then she must show that the constitutional right was "clearly established" prior to the challenged official action.  Id.  The dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Holland v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001) (internal quotations omitted).  This requirement that the right have been "clearly established" is designed to protect "all but the plainly incompetent or those who knowingly violate the law." Jiron v. City of Lakewood, 392 F.3d  410 (10th Cir. 2004) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).   If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  Saucier, 533 U.S. at 201.

The Court is first required to decide whether the plaintiff has alleged a viable constitutional claim.  In the context of a motion to dismiss, the court's review of the qualified immunity defense is limited to the pleadings.  Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir.

3

1994). Siegert v. Gilley, 500 US 226, 231 (1991). The Court must accept the factual allegations of the complaint as true. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969); Dewell v. Lawson, 489 F.2d 877, 879 (10th Cir. 1974). The question is not whether plaintiff will ultimately prevail but whether the allegations entitle plaintiff to offer evidence to support its claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. American Home Assur. Co. v. Cessna Aircraft Co., 551 F.2d 804, 808 (10th Cir. 1977); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Material allegations must be taken as true, and all reasonable inferences must be indulged in favor of the plaintiff. Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

## Discussion

Because Defendants' motion for summary judgment is based on the original Complaint, the Court will first determine the merits of that motion, and then turn to Plaintiff's motion to amend.

## I.    Defendants' Motion for Summary Judgment

The Court will address Counts III, IV, VII, VIII and IX only, which involve Plaintiff's claims asserted solely against the officer Defendants and the Village of Los Lunas in Counts I, II, V, and VI have been resolved by Plaintiff's acceptance of an Offer of Judgment (Doc. 16).

### Legal Standard

Plaintiff was no longer an employee of LLPS at the time of the incident forming the basis of the Complaint. Complaint, ¶ 45. The appropriate substantive framework for a First Amendment claim where the plaintiff is not an employee of defendants is set out in Worrell v.

4

Henry, 219 F.3d 1197 at 1212 (10th Cir. 2000).  Such a plaintiff must prove that: (1) plaintiff was engaged in constitutionally protected activity; (2) defendant's actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

A.      Count III - Excessive Force (Fourth Amendment) against Defendant Reyes

In the response to Defendant's motion for summary judgment, Plaintiff concedes that the assertion of a Fourth Amendment claim against Reyes was "error." Plaintiff explains that the proposed Amended Complaint correctly asserts the claims as a First Amendment claim.  This claim is based on Reyes actions in coercing Plaintiff's removal from the campus, in retaliation for having sued LLPS previously.  Response at 2, text & n.1.  A discussion of the viability of the retaliation claim will be taken up when the Court addresses Plaintiff's motion to amend, below. For purposes of Count III as alleged in the original Complaint, the Court construes Plaintiff's statements in the pleading as conceding to dismissal of the Fourth Amendment claim against Reyes. B.      Count IV - Freedom of Association

Plaintiff contends that Reyes' conduct in having her removed from the school grounds violated her First Amendment right of association.   The United States Supreme Court has recognized two types of association protected by the First Amendment: the right to enter into certain intimate human relationships; and the right to associate for purpose of engaging in those activities which are protected by the First Amendment.  Schalk v. Gallemore, 906 F.2d 491, 498 (10th Cir.1990) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).  If either would apply to Plaintiff's claim under this theory, it would be the latter.  The question is whether

Plaintiff's formation of a teacher support group falls in that category.  I find that it does not,

because the political association envisioned within First Amendment protection does not

automatically extend to any formation of a group.  See, e.g., Jantzen v. Hawkins, 188 F.3d 1247,

1251 (10th Cir.1999) (noting the two types of First Amendment rights: political association and

free speech); see also, Lucero v. Salazar, 117 N.M. 803, 804, (Ct.App), cert denied, 117 N.M.

802 (1994) (acknowledging limits to right under the federal constitution in that it does not apply

to the right of one individual to associate with another) (citing Futrell v. Ahrens, 88 N.M. 284,

286 (1975)).

Moreover, regardless of whether formation of such a group would be protected by the

First Amendment, Plaintiff fails to state a claim under this theory for another reason.  Plaintiff

might choose to read the facts as indicating that Reyes prevented her from forming a teacher

support group, but that is not a fair construction of the allegations, even construing them in

Plaintiff's favor.  Plaintiff states that she "successfully distributed her newsletter without incident."

Complaint, ¶ 51.  Thus, there is no allegation of intrusion by Defendants regarding Plaintiff's

formation of the group.

*Qualified Immunity*

With a finding that Plaintiff has not asserted a violation of a constitutional right, the

Court's inquiry could end here.   However, I find alternatively that Defendants would be entitled

to qualified immunity on Plaintiff's freedom of association claim.

A constitutional right is clearly established for qualified immunity purposes when there is a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts has found the law to be as the plaintiff maintains.  Camfield v City of Oklahoma

City, 248 F.3d 1214, 1228 (10th Cir. 2001).  Plaintiff need not show that the very action in question was previously held unlawful. Schuler v. City of Boulder,189 F.3d 1304, 1309 (10th Cir. 1999). While there must be some similarities between cited cases and the factual situation in the case at hand, the similarities need not be identical.  Id.

I find no legal support, nor does Plaintiff present any, for the proposition that formation of the teacher support group is afforded the protection given to political alignment or association under the First Amendment (even assuming that Plaintiff had been prevented from distributing the newsletters, which Plaintiff has not alleged).  Roberts v. United States Jaycees, 468 U.S. at 620 (noting the broad range of human relationships that may make greater or lesser claims to constitutional protection from particular incursions by the State but declining to mark the potentially significant points on this terrain with any precision).  It is also unclear, and has been, whether a "public concern" analysis is a requirement in all freedom of association claims.  See Flanagan v. Munger, 890 F.2d 1557, 1564 n. 7 (10th Cir.1989) (expressing doubt on the issue), but see Schalk v. Gallemore, 906 F.2d 491, 495 (10th Cir.1990) (applying "public concern" requirement given circumstances of case at bar).

I therefore conclude that, construing the allegations in Plaintiff's favor, she cannot show that Defendants violated clearly established law in her claim based on freedom of association.

C.    Count IV - Freedom of Speech

Plaintiff's claim under this theory must be addressed on two levels: the nature of Plaintiff's speech, and what the Court views as the more critical question, whether Plaintiff's removal from campus was a violation of her First Amendment rights.

1.    Nature of Plaintiff's "Speech"

The first issue concerns whether Plaintiff was engaged in constitutionally protected activity.  A two-part inquiry is used to determine whether a public employee's speech warrants constitutional protection:  (1) whether the speech relates to matters of public concern and whether the interests of the public employee in commenting on matters of public concern outweigh the interest of the government employer "in promoting the efficiency of the public services it performs through its employees."  Connick v. Myers,  461 U.S. 138, 146 (1983); Pickering v. Board of Education, 391 U.S. 563, 568 (1968).

Plaintiff alleges that she entered the high school campus in order to distribute a newsletter informing teachers of a support group she was forming.  She contends that the newsletter constitutes protected speech because it touched on matters of public concern, and directs the Court's focus on the content of the newsletter in order to support this contention.  The newsletter thanks individuals who helped Plaintiff "survive"; refers to Plaintiff's website which includes, among other items, names of "politicians lawyers, members of the media, and union officials" who know of "school corruption" and either refuse to fight it or profit from it; and urges teachers to take schools out of the hands of "unscrupulous, unethical 'businessmen/businesswomen'" who run the schools. Ex. 1, Pltff's Proposed Amended Complaint (Doc. 21), ¶ 16.

Notwithstanding the purported protected nature of the newsletter, there are several fatal flaws to Plaintiff's free speech claim, even taking all the allegations as true.  Plaintiff's purpose in distributing the newsletters – forming a teacher support group – is not a matter of public concern, and thus fails to state a claim under the first element in this type of First Amendment claim.  See, Grattan v. Board of School Com'rs of Baltimore City, 805 F.2d 1160, 1163 (4th Cir. 1986) (distribution of flyers urging teachers to support his teacher's union which was not so "cozy with

the Mayor" was not of public concern).[2]

Further, speech which is afforded First Amendment protection, must be actual speech which is communicated to a defendant.  There is no allegation to suggest that Plaintiff distributed the newsletter to Reyes, or that Plaintiff made any statement to Reyes when she entered the campus to distribute the newsletter.  See Jones v. Collins, 132 F.3d 1048 (5th Cir. 1998); Fogarty v. Boles, 121 F.3d 886, 890-91 (3rd Cir. 1997) (the protection for speech in the First Amendment only protects actual speech), citing Waters v. Churchill, 511 U.S. 661 (1994).

In some situations, nonverbal conduct can constitute protected "speech" for purposes of the First Amendment.  Plaintiff's conduct in entering the school campus and passing out the newsletters does not pass for the kind of "expressive conduct" entitled to protection under the First Amendment.  A two-part test must be met for nonverbal conduct to be "expressive conduct" and therefore, "speech" protected under First Amendment:  (1) the actor must intend to convey particularized message, and (2) there must be great likelihood that the message would be understood by those who observe the conduct.  Bivens By and Through Green v. Albuquerque Public Schools, 899 F.Supp. 556, 561 (D.N.M.,1995) (concluding that Plaintiff failed to meet burden of showing that wearing of sagging pants is constitutionally protected speech under the First Amendment).

Even assuming that the speech contained in the newsletter was protected speech, Plaintiff's entry onto the school grounds and distributing the newsletters in itself would not send a

---

    [2]  Because I find that Plaintiff's conduct did not touch on a matter of public concern, there is no need to proceed to a balancing inquiry under Pickering v.  Board of Educ., 391 U.S. 563 (1968), which is urged by Plaintiff.  Further, Defendants note correctly that the balancing inquiry is not appropriate in the context of a motion to dismiss.

"particularized message" to an observer, and is simply not the kind of conduct that belongs in the category of nonverbal conduct protected by the First Amendment.  See, e.g., Buckley v. Valeo, 424 U.S. 1, 14-23 (1976) (campaign expenditures are political expression); Spence v. Washington, 418 U.S. 405, 410-11 (1974) (taping black peace symbols to United States flag in 1970 expressed political criticisms that viewers understood); Tinker v. Des Moines Indep. Community School District, 393 U.S. 503, 505 (1969) (wearing armbands to protest Vietnam War is protected "symbolic act") cited in Cabrol v. Town of Youngsville, 106 F.3d 101, 109 (5th Cir. 1997).

Finally, and what is perhaps most damaging to Plaintiff's free speech claim by her own allegation, Plaintiff admits that she "successfully distributed her newsletter without incident." Complaint, ¶ 51.  She was only stopped and removed when she re-entered the school grounds in order "to make an additional contact."   There can be no arguable First Amendment claim where there was no intrusion by Defendants in her efforts to pass out the newsletters.

2.      *Plaintiff's Removal from LLPS*

Plaintiff was not employed by LLPS on December 19, 2002, and does not allege any fact which might suggest she had a right, as a former employee, to walk onto the school grounds and distribute her newsletter.  Defendants succinctly describe the fallacy in Plaintiff's position: ". . . accepting Plaintiff's well-pled facts as true, there can be no suppression of speech given that she had no right to be on the campus in the first place."   Reply at 4.[3]   Plaintiff does not cite to any

---

[3]  Plaintiff's allegations of her removal from campus is almost a *dejà vu* reading experience for the Court.  Plaintiff apparently was escorted off the school grounds once before by the Los Lunas police officers while she was employed by LLPS.  See Civil No. 01-640, Mem. Opin. & Order (Doc. 352), at 19-20.

legal authority which extends that right to her.  To the contrary, it has been recognized that "school officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property."  Van Deelen v. Shawnee mission Unified School Dist., 316 F.Supp.2d 1052, 1057 (D.Kan.,2004) (citations omitted).

Instead, Plaintiff cites to two cases which support her argument that expressive activities can be suppressed only if the activities are disruptive.  Neither of the cases addressed (or needed to address) whether Plaintiff had a constitutional right to be on the school grounds.  One case addressed the constitutionality of a noise ordinance for grounds adjacent to a school building, where plaintiff had participated in a public demonstration of protest planned by black students. See Grayned v. City of Rockford, 408 U.S. 104, 117-118 (1972).  The other case concerned nonverbal "speech" made by students wearing armbands.  Tinker v Des Moines Indep. Community School Dist., 393 U.S. 503 (1969).  The issue before the court in both cases was the disruptiveness of the activity, not whether the plaintiffs had a right to be where they were in the first place.  In Grayned, the plaintiff remained outside the campus, and in Tinker, the plaintiffs were students, who clearly were authorized to be on the campus at the time they were present.

Plaintiff would choose to ignore this threshold issue.  The fact that Plaintiff's purpose in entering the school grounds was to distribute her newsletter did not cloak her with authority to be there.  See Grattan, 805 F.2d at 1163 (fact that plaintiff's presence on the property was not authorized, alleviated any necessity of finding his conduct to be disruptive in order to restrict expressive activity on public school property); see also Axson-Flynn v. Johnson, 356 F.3d 1277, 1285 (10th Cir. 2004) (public schools do not possess all of the attributes of streets, parks, and

other traditional public forums that "have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions") (quoting <u>Hazelwood Sch. Dist. v. Kuhlmeier</u>, 484 U.S. 260, 266 (1988)).  Therefore, viewing all reasonable inferences in the pleadings favorably to Plaintiff, she still fails to allege facts which support the violation of her right to free speech under the First Amendment.

*Qualified Immunity*

The Court has already found that Plaintiff's activities do not constitute protected speech under the First Amendment, for several reasons, and that she has not alleged the violation of a constitutional right.   Alternatively, dismissal of Plaintiff's free speech claim would be appropriate because Defendants would be entitled to qualified immunity.  At the time relevant to the allegations, it was not clearly established that formation of a teacher support group, or distribution of a newsletter about such a group, was protected speech under the First Amendment, particularly when this conduct occurred in a forum that was not designated for public speech.  I conclude that Plaintiff cannot show that Defendants violated clearly established law in her claim of free speech under the First Amendment.

D.      <u>Counts VII, VIII and IX</u>

Given the Court's findings on Counts III and IV, Counts VII, VIII and IX should be dismissed as well.  Counts VII and VIII  assert claims against LLPS based on Reyes' conduct, which was allegedly carried out pursuant to custom and policy of LLPS, and also based on its failure to train and supervise.  However, a municipality may not be held liable where there is no underlying constitutional violation by any of its officers.  <u>Apodaca v. Rio Arriba County Sheriff's Dept.</u>, 905 F.2d 1445, 1447 (10th Cir. 1990) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796,

799 (1986)); <u>Hinton v. City of Elwood, Kan.</u>, 997 F.2d 774, 782 (10th Cir. 1993) (where an

individual law enforcement officer is entitled to qualified immunity on the ground that his or her

conduct did not violate the law, it is proper to dismiss claims against the municipality).

Dismissal of Plaintiff's claims against Defendant Reyes also warrants dismissal of Count

IX, which is a claim for punitive damages against Defendant Reyes in his individual capacity.

In sum, I conclude that Plaintiff's First Amendment claims against Defendants LLPS and

Reyes will be dismissed for failure to satisfy the first prong of the qualified immunity analysis,

which requires a plaintiff to allege the violation of a constitutional right.  The Court finds

alternatively that Defendants are entitled to qualified immunity on these claims.

## II.     Plaintiff's Motion to Amend

Plaintiff seeks to amend the Complaint, intending that the amendments "should resolve all

of the issues raised by Defendants" in their motion to dismiss.  Response at 3.   Requests for leave

to amend pleadings should be liberally granted.  Fed. R. Civ. P. 15.  However, leave to amend

pleadings may be denied when the amendment is untimely or when the amendment would be

futile.  <u>Bauchman v. West High School</u>, 132 F.3d 542, 559 (10th Cir. 1997); <u>Zenith Radio Corp.</u>

<u>v. Hazeltine Research, Inc</u>., 401 U.S. 321, 330 (1971).

The Court has reviewed the proposed Amended Complaint and finds that it would not

mend the deficiencies or otherwise enhance Plaintiff's claims against Defendants.  There is no

material difference between the two Complaints.  The proposed Amended Complaint reflects the

resolution of claims against the Village of Los Lunas and the officer Defendants.  It omits

reference to factual allegations which occurred in August 2001 (consideration of which would

probably have been precluded given Plaintiff's previous litigation).  It modifies some allegations in

minor ways.  For example, Plaintiff states in the proposed Amended Complaint that she was distributing her newsletter only to "specific persons" who apparently were members of a teacher support group.  Prop. Amended Complaint, ¶¶ 15, 19.  These changes have no effect on the legal sufficiency of the allegations or the viability of the legal theories advanced by Plaintiff.

Plaintiff also seeks to add a retaliation claim in Count II, alleging that Reyes' motives flowed from Plaintiff's filing of her previous lawsuit.  However, allowing Plaintiff to amend the Complaint to add this claim would be futile.  A retaliation claim also requires that Plaintiff show that she was engaged in constitutionally protected activity.  Plaintiff's previous lawsuit does not qualify as a matter of public concern, where it was filed to vindicate personal employment disputes based on discrimination.  See Rice v. Ohio Dep't of Transp, 887 F.2d 716, 720 (6th Cir. 1989), vacated on other grounds, 497 U.S. 1001 (1990).[4]  Thus, the retaliation claim would be dismissed also for failure to state a claim, eliminating further inquiry into a qualified immunity analysis.

Accordingly, the Court denies Plaintiff's motion to amend the Complaint, finding that amendment would be futile.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss Plaintiff's Complaint on the Basis of

---

[4]  It is not clear among the circuits, nor is there established precedent in the Tenth Circuit or in the United States Supreme Court, whether "constitutionally protected activity" in a non-employee First Amendment claim, as set out by  Worrell v. Henry, 219 F.3d 1197, requires the traditional "public concern"  matrix. While courts may not require a showing that the matter is of "transcendent importance," courts seem to adhere to the traditional First Amendment notions of "public concern." See McCook v. Springer et al, , unpubl. opin., 2002 WL 1788529, *6 (10th Cir. 2002).  Thus, alternatively, Defendants would have been entitled to qualified immunity on the issue of whether Plaintiff's previous lawsuit constituted sufficient "constitutionally protected activity" under Worrell.

Qualified Immunity and Other Grounds, filed by Defendants LLPS and Reyes (**Doc. 18**) is hereby GRANTED for the above-stated reasons;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (**Doc. 21**) is hereby DENIED based on the Court's finding that amendment would be futile;

**IT IS FINALLY ORDERED** that Plaintiff's claims against all Defendants are hereby DISMISSED WITH PREJUDICE, based on the findings herein regarding Defendants LLPS and Reyes, and based on Plaintiff's acceptance of an Offer of Judgment as to Defendants Village of Los Lunas and the officer Defendants (Doc. 16).

A Judgment in accordance with this Memorandum Opinion and Order shall issue.

_____

UNITED STATES DISTRICT JUDGE